# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

BOARD OF TRUSTEES OF THE PAINTERS
AND FLOORCOVERERS JOINT
COMMITTEE, *et al.*,

      Plaintiffs,

vs.

SUPER STRUCTURES INC., *et al.*,

      Defendants.

Case No.: 2:18-cv-01364-GMN-GWF

**ORDER**

Pending before the Court is the Motion to Dismiss, (ECF No. 5), filed by Super Structures, Inc. ("SS1"), Super Structures Inc. ("SS2"), Tracy Reynolds, Robert Reynolds, and Western National Mutual Insurance Company (collectively "Defendants"). Plaintiffs Board of Trustees of the Painters and Floorcoverers Joint Committee, *et al.* (collectively "Plaintiffs"), filed a Response, (ECF No. 12), and Defendants filed a Reply, (ECF No. 18).[1]

For the reasons discussed herein, Defendants' Motion to Dismiss is **DENIED**.

## I. BACKGROUND

This case arises from Defendants' alleged creation of a sham company in order to avoid payment obligations under the Employee Retirement Income Security Act of 1974, 29 U.S.C.

---

[1] Also pending before the Court are Plaintiffs' Motion to Conduct Discovery and Motion to File a Sur-Reply, (ECF Nos. 13, 19), as well as Defendants' Motion to File Excess Pages, (ECF No. 17).

In light of this Order, the Motion to Conduct Discovery is **DENIED as moot**. As to Plaintiffs' Motion to File a Sur-Reply, Plaintiffs request additional briefing to respond to Defendants' newly raised arguments in their Reply. (*See* Mot. to File a Sur-Reply, ECF No. 19). Rather than permit additional briefing, the Court will disregard arguments Defendants raise for the first time in their Reply, *see Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), and **DENY** Plaintiff's Motion. The Court further finds that considerations of consistency and fairness counsel against permitting Defendant to advance additional, new arguments. Thus, Defendants' Motion for Leave to File Excess Pages is likewise **DENIED**.

§§ 1001, *et seq.* ("ERISA"). Defendant Super Structures, Inc. ("SS1") is a now-defunct Nevada corporation, formerly owned by Defendants Tracey Reynolds and Robert Reynolds. (Compl. ¶¶ 9–11, ECF No. 1). Defendant Super Structures Inc. ("SS2), which is presently owned by the Reynolds', is a Nevada corporation that came into existence approximately three years after SS1 closed its operations. (*Id.* ¶¶ 34, 40). Plaintiffs are several construction-related, employee-benefit trusts and associations who bring this action seeking to hold SS2, and the Reynolds', liable for SS1's alleged unpaid ERISA contributions. (*Id.* ¶¶ 5–7).

In November 2005, SS1 signed a collective bargaining agreement (the "CBA") with the International Union of Painters and Allied Trades, District Council 15, Painters Local 159 (the "Union"), and the Painting and Decorating Contractors of America, Southern Nevada Chapter ("PDCA"). (*Id.* ¶ 18). The CBA states that its provisions remain in effect from July 1, 2004, through June 30, 2007. (*Id.*) A clause of the CBA (the "Duration Clause") provides that the CBA automatically renews annually unless terminated by either party. (*Id.* ¶ 20). Termination of the CBA requires written notice of termination, which must be "served by either party upon the other no less tha[n] sixty (60) and not more than ninety (90) days prior to 6-30-2007 or June 30 of any subsequent year." (*Id.*). In January 2007, SS1 assigned its bargaining rights to PDCA, authorizing it to represent SS1 in labor negotiations with the Union under the CBA. (*Id.* ¶ 22). Plaintiffs allege that SS1 never revoked this assignment, which is expressly incorporated into the CBA. (*Id.* ¶¶ 21, 23).

Under the terms of the CBA and incorporated agreements, SS1 was obligated to submit written reports stating the identities and hours worked of employees performing labor covered by the CBA. (*Id.* ¶ 27). Plaintiffs are intended beneficiaries with respect to SS1's reporting and contribution obligations. (*Id.* ¶ 29).

On September 2, 2009, SS1 sent a letter to the Union advising that it would be winding down its business and "closing its doors on or about December 31, 2009." (*Id.* ¶ 34). The letter

further states, "as we have no trade employees, we will not be renewing the Bond expiring November 29, 2009." (*Id.*).

In January 2009, in response to a remittance inquiry by a third-party administrator of the trust funds, SS1 stated it was out of business and requested deactivation of the account. (*Id.* ¶ 35). In August 2009, SS1 contacted the Nevada State Contractors Board ("Contractors Board") to request that its licenses be placed on inactive status, which the Contractors Board granted, effective August 14, 2009. (*Id.* ¶ 36). SS1 allegedly continued to renew its corporate registration with the Secretary of State by filing Annual Lists in November 2009 and 2010, identifying 3395 S. Jones, #279, Las Vegas 89146 as the company's address (the "Jones Address"). (*Id.* ¶ 37). In June 2011, SS1 surrendered its contractor's license to the Contractors Board and filed a Certificate of Dissolution in October 2011. (*Id.* ¶¶ 38–39). Both of these filings identify the Jones Address as SS1's operative address. (*Id.*).

On May 27, 2013, Tracey Reynolds filed Articles of Incorporation with the Nevada Secretary of State to establish an entity called Super Structures Inc. ("SS2").[2] (*Id.* ¶ 40). SS2's address was represented to be the Jones Address, and Tracey Reynolds was listed as President and Director, and non-party Carol Downing ("Downing") as Secretary and Director. (*Id.* ¶ 41). SS2 applied to the Contractors Board for general building, painting and decorating, and wrecking licenses. (*Id.* ¶ 43). The application included a request for waiver of tests required to obtain these licenses based upon SS1's prior licenses. (*Id.*). The Contractors Board granted SS2's requested licenses on July 26, 2013. (*Id.* ¶ 45).

According to Plaintiffs, since its inception, SS2 has interchangeably identified itself as "Super Structures," "Super Structures Inc." and "Super Structure, Inc," and consistently used the Jones Address on its filings with the Nevada Secretary of State. (*Id.*). In November 2012,

---

[2] The only difference in the entities' names is the removal of the comma between "Super Structures" and "Inc."

Robert Reynolds replaced Downing as Secretary of SS2, leaving Robert and Tracey Reynolds as SS2's only corporate officers. (*Id.* ¶ 47).

Plaintiffs allege that since August 1, 2009, SS1 has not submitted any remittance reports or tendered payment to Plaintiffs for their work. (*Id.* ¶ 49). In April 2018, Plaintiffs sent Defendants a letter stating an intent to conduct a payroll compliance review of Defendants' records for the period of April 1, 2012, through March 31, 2018. (*Id.* ¶ 51). SS2 declined Plaintiffs' request, stating that SS2 is not a signatory to the CBA. (*Id.* ¶ 52).

Plaintiffs were able to obtain certified payroll records ("CPRs") for two projects for which Defendants performed. (*Id.* ¶ 55). Plaintiffs' auditor confirmed that Defendants' employees performed labor covered by the CBA on these projects, but Defendants did not correspondingly submit reports or make payments to Plaintiffs as required. (*Id.* ¶ 59). The CPRs additionally show at least one common employee between the SS1 and SS2. (*Id.* ¶ 57).

Plaintiffs filed their Complaint on July 24, 2018, bringing the following causes of action: (1) breach of contract against all Defendants; (2) violation of ERISA against all Defendants; (3) personal liability against Tracey and Robert Reynolds; (4) demand for relief on bond against Western National Mutual Insurance Company; and (5) payment of labor indebtedness against Doe and Roe Defendants. (*Id.* ¶¶ 73–103).

## II. LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. DISCUSSION

Defendants argue that all of Plaintiffs' causes of action—breach of contract, violation of ERISA, personal liability, bond relief, and labor indebtedness—must be dismissed because there is no privity of contract between any Defendant and any Plaintiff. (Mot. to Dismiss ("MTD") 9:3–5, ECF No. 5). Defendants contend that NRS 78.050 *et seq.* shields SS2 from liability for SS1's debts because Nevada law respects them as distinct entities. (*Id.* 9:3–11:15). Defendants continue that Plaintiffs have conceded that SS1 and SS2 are independent entities given the Complaint's allegations, including the Union's alleged receipt of multiple letters of resignation and cancellation, as well as express statements from SS1 that it was winding down. (*Id.*). Plaintiffs oppose dismissal on the basis that SS1 never properly terminated the CBA pursuant to the Duration Clause. (Resp. to MTD 14:7–15:3, ECF No. 12). Plaintiffs further assert that under the alter ego doctrine, SS2 may be held liable for SS1's obligations. (*Id.* 11:8–12:19).

Prior to considering Defendants' arguments, the Court first addresses whether the exhibits attached to Defendants' Motion to Dismiss may be properly considered.

### A. Incorporation by Reference

Defendants' Motion includes over twenty-seven exhibits, which Defendants assert are appropriately before the Court under the doctrine of incorporation by reference. (MTD 2:15–16). Plaintiffs object to Defendants' exhibits on the basis that they are unauthenticated. (Resp. 8:11–19).

Generally, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). An exception to the rule is the doctrine of incorporation by reference, under which a court may take account of documents on which the "complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation and internal quotation marks omitted). A court may treat documents that meet these criteria as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.* (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).

The Court agrees with Defendants that some of its proffered exhibits, such as portions of the CBA and Defendants' June 2010 surrender-of-license letter, are expressly identified in the complaint, central to Plaintiffs' causes of action, and are undisputed with respect to their authenticity. (*See, e.g.*, CBA, Ex. S to MTD, ECF No. 5-1); (Surrender of License, Ex. I to MTD). Nevertheless, the Court need not determine the propriety of applying this doctrine to each of Defendants' exhibits. As discussed below, Defendants' arguments, purportedly bolstered by these exhibits, fail to negate elements of Plaintiffs' claims, which the Court finds are sufficiently pleaded.

**B. Alter Ego Theory**

To prevail on a theory of alter ego liability, Plaintiffs must make a "threshold showing" that SS1 and SS2 "constitute a single employer." *UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994). "The criteria for determining whether two firms constitute a single employer are (1) common ownership, (2) common management, (3)

interrelation of operations, and (4) centralized control of labor relations." *Id.*  While "[n]o one factor is controlling," the most significant factor is "centralized control of labor relations, which can be demonstrated either by showing common control of day-to-day labor matters, or by showing that the person in charge of the union company's labor relations made the decision that the second company would be non-union." *Id.* (internal citations omitted).  In addition to these four factors, courts must also ask whether the non-union firm "was being used 'in a sham effort to avoid collective bargaining obligations' rather than for the pursuit of legitimate business objectives untainted by 'union animus.'" *Slack v. Int'l Union of Operating Engineers*, 83 F. Supp. 3d 890, 899 (N.D. Cal. 2015) (quoting *Resilient Floor Covering Pension Fund v. M&M Installation, Inc.*, 630 F.3d 848, 852 (9th Cir. 2010)).

Plaintiffs have plausibly alleged an entitlement to relief on its alter ego theory.  Plaintiffs allege—and Defendants' evidence does not negate—that Tracey Reynolds was the common owner of both SS1 and SS2, and she served both entities as President, Secretary, Treasurer, and Director. (*See* Compl. ¶¶ 41, 62–63, 72, 90); (Corporate Identification Lists, Exs. D, P to MTD, ECF No. 5-1).  As to the interrelation of operations, Plaintiffs allege that SS1 and SS2 share common addresses, telephone numbers, registered agents, administrative staff, in addition to having nearly identical names, at least one common employee, and the same classes of construction licenses. (*See* Compl. ¶¶ 43, 63).  With respect to centralized control, Plaintiffs point out that Tracey Reynolds signed SS1's letter purporting to terminate the CBA, SS1's surrender of license, as well as SS2's response to auditing requests directed to SS1. (Pl.'s Resp. 12:13–15); (*see also* Auditing Request, Ex. X to MTD, ECF 5-1); (Surrender of License, Ex. J to MTD); (Letter to Joint Committee, Ex. K to MTD); (Response to Auditing Request, Ex. X to MTD).

The final element for consideration—whether Defendants created SS2 to avoid liability for SS1's debts—is also adequately pleaded.  In addition to expressly alleging that "SS2 was

formed . . . after SS1 ceased to operate to avoid SS1's obligations," Plaintiff also claims Defendants avoided the obligations through SS1's transfer of its "projects, contracts, and covered labor to SS2," a "series of business transactions" intended to transfer assets, as well as comingling of funds. (Compl. ¶¶ 65–66). Plaintiffs further allege, based upon its auditor's findings, that SS2's employees performed work covered by the CBA until at least 2013, over two years after SS1 purportedly ceased operations. (*Id.* ¶ 59).

Based upon the foregoing, Plaintiffs have sufficiently alleged facts from which the Court can infer that Defendants created SS2 to avoid SS1's payment obligations. The Court now turns to Defendants' arguments in favor of dismissal.

### 1. NRS 78.050

Defendants first argue that Nevada law precludes SS2 from liability as a successor to SS1 because "it is undisputed that SS1 dissolved and wound up its affairs." (MTD 5:5–6). Therefore, according to Defendants, denial of its Motion "would require this Court to ignore NRS 78." (*Id.* 5:7–8). The Court disagrees.

NRS 78.050, titled "[c]ommencment of corporate existence," states that a corporation is formed upon the filing of articles of incorporation. "Every corporation, by virtue of its existence as such, is entitled . . . [t]o have succession by its corporate name until dissolved and its affairs are wound up according to law," and to "wind up and dissolve itself." *See* NRS 78.060(2)(a), (f).

These statues do not, as Defendants argue, categorically immunize SS2 from liability for SS1's acts or omissions. The very nature of an alter ego claim presupposes a "technical change in the structure or identity of the employing entity, frequently to avoid the effect of labor laws," and if meritorious, subjects the employer "to all the legal and contractual obligations of the predecessor." *Howard Johnson Co. v. Detroit Local Joint Exec. Bd., Hotel & Rest. Emp. & Bartenders Int'l Union, AFL-CIO*, 417 U.S. 249, 259 n.5 (1974). Were the Court to adopt

Defendants' construction of NRS Chapter 78, a corporation in Nevada could perpetually shield itself from alter ego claims by merely changing its name.[3] The Court therefore rejects Defendants' suggestion that Nevada corporate law precludes alter ego theories of liability. *See Michigan Elec. Emps. Pension Fund v. Encompass Elec. & Data, Inc.*, 556 F. Supp. 2d 746, 769 (W.D. Mich. 2008) (disregarding defendants' argument that Michigan law respects "separate corporate identities," because it is "federal common law, not Michigan common law, which governs the alter ego determination in an ERISA dispute.").

Similarly, Defendants' reliance on *Klabacka v. Nelson*, 394 P.3d 940 (Nev. 2017) is misplaced. According to Defendants, the *Klabacka* Court's protective treatment of spendthrift trusts applies with equal force to individuals and corporations, who are entitled to "maximum protection" under Nevada law. (MTD 11:2–15) (citing *Klabacka*, 394 P.3d at 951). The Court agrees with Plaintiffs that Defendants' reliance upon "Nevada state law does not control the Court's analysis nor dictate a conclusion regarding alter ego." (Resp. 11:4–6). While state law may provide guidance in the context of alter ego disputes under ERISA, federal law is controlling. *See Bd. of Trustees of Mill Cabinet Pension Tr. Fund for N. California v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 772 (9th Cir. 1989) ("In considering whether to disregard the corporate form, we apply federal substantive law, although we may look to state law for guidance.") (citation omitted); *see also Nor-Cal Plumbing*, 48 F.3d at 1475 ("The alter ego doctrine as developed in labor law is analytically different from the traditional veil-piercing doctrine as developed in corporate law.").

### 2. Termination of the CBA

Last, Defendants argue that Plaintiffs' Complaint must be dismissed in its entirety because it is undisputed that SS1 terminated the CBA. (MTD 6:1–7:15, 9:6–9). Plaintiffs

---

[3] Such an interpretation would also be inconsistent with NRS 78.747, under which Nevada expressly authorizes alter ego claims. *See* NRS 78.747.

respond that SS1's purported termination was of no effect because it did not comply with the Duration Clause of the CBA. (Resp. 12:20–15:3).

Notwithstanding Defendants' insistence that SS1 terminated the CBA, Defendants do not point the Court to evidence that SS1's termination was timely pursuant to the sixty to ninety-day window set forth by the CBA's Duration Clause. *See Irwin v. Carpenters Health & Welfare Tr. Fund for California*, 745 F.2d 553, 557 (9th Cir. 1984) (strictly construing terms of the parties' CBA and holding that attempted termination outside of the sixty-day notice period was ineffective). Nor have Defendants addressed or rebutted Plaintiffs' allegation that SS1 assigned its bargaining rights to PDCA, whereby PDCA was "to represent it in future labor negotiations with the Union regarding the [CBA] and any successor thereto." (*See* Compl. ¶ 22). Also unaddressed is Plaintiffs' related allegation that Defendants never terminated this delegation of authority to PDCA, which was allegedly incorporated into the parties' CBA. (*Id.* ¶ 21, 23). Taking Plaintiffs' allegations as true—and in the absence of any evidence negating these assertions—SS1's purported termination was both untimely and improper. *See, e.g.*, *Local 257, Int'l Bhd. of Elec. Workers, AFL-CIO v. Grimm*, 786 F.2d 342, 345 (8th Cir. 1986) (reversing district court's judgment in favor of employers where purported termination was untimely under the duration clause and unauthorized because employers failed to terminate its agent's bargaining authority).

In conclusion, Defendants' assertion that SS1 properly terminated the CBA fails to account for Plaintiffs' contrary allegations that the attempted termination violated the Duration Clause and that SS1 never rescinded its delegation of bargaining power to PDCA. Moreover, the Court rejects Defendants' contention that Nevada's protective posture with respect to corporate entities shields SS2 from a potential alter ego claim. Accordingly, Defendants' Motion to Dismiss is denied.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 5), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Conduct Discovery, (ECF No. 13), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Excess Pages, (ECF No. 17), and Plaintiffs' Motion to File a Sur-Reply, (ECF No. 19), are **DENIED.**

**DATED** this _22_ day of March, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Judge