**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BOARD OF TRUSTEES OF THE PAINTERS AND FLOORCOVERERS JOINT COMMITTEE, *et al.*, | Case No.:2:18-cv-01364-GMN-EJY |
| Plaintiffs, | **ORDER** |
| vs. | |
| SUPER STRUCTURES INC., *et al.*, | |
| Defendants. | |

Pending before the Court is the Motion for Reconsideration, (ECF No. 72), filed by Defendants Super Structures, Inc. ("SS1") and Super Structures Inc. ("SS2"), Tracey Reynolds, Robert Reynolds, and Western National Mutual Insurance Company (collectively, "Defendants"). Plaintiffs Board of Trustees of the Painters and Floorcoverers Joint Committee, *et al.* (collectively, "Plaintiffs"), filed a Response, (ECF No. 75), and Defendants filed a Reply, (ECF No. 81).

Also pending before the Court is Plaintiffs' Motion for Attorney Fees, (ECF No. 63). Defendants filed a Response, (ECF No. 71), and Plaintiffs filed a Reply, (ECF No. 76).

For the reasons discussed below, the Court **DENIES** Defendants' Motion for Reconsideration and **GRANTS** Plaintiffs' Motion for Attorney Fees.

**I.   BACKGROUND**

This case arises out of Defendants' alleged creation of a sham company to avoid payment obligations under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). Defendant Super Structures, Inc. ("SS1") is a now-defunct Nevada corporation, formerly owned and operated by Defendants Tracey and Robert Reynolds. (Cert.

Dissolution, Ex. 58 to Pls.' MSJ, ECF No. 50-60). Defendant Super Structures Inc. ("SS2"), which is presently owned and operated by Tracey and Robert Reynolds, is a Nevada corporation that came into existence approximately eighteen months after SS1 dissolved. (Art. Inc., Ex. 59 To Pls.' MSJ, ECF No. 50-61). Plaintiffs are several construction-related employee-benefit trusts and associations who bring this action seeking to hold SS2 and the Reynolds' liable for SS1's alleged unpaid ERISA contributions. (Compl. ¶¶ 5–7).

SS1 was incorporated on November 13, 2003, by Robert Reynolds, as President and Secretary, and non-party George Kelesis, as Treasurer, however Kelesis had no ownership interest in SS1. (Art. Inc., Ex. 1 to Pls.' MSJ, ECF No. 50-3); (Tracey Dep. 14:17–15:25, Ex. 5 to Pls.' MSJ, ECF No. 50-7). On April 5, 2007, Robert transferred all of his interest in SS1 to Tracey, making Tracey the sole shareholder. (Dec. 2016 Minutes, Ex. 9 to Pl's MSJ, ECF No. 50-11). SS1 used offices and a warehouse located at 6327 Dean Martin Drive and had a mailing address at 3395 S. Jones, #297, Las Vegas 89146. (Art. Inc., Ex. 1 to Pls.' MSJ); (Robert Dep. 72:10–11, Ex. EE to Defs.' MSJ, ECF No. 44-1). SS1 primarily undertook multi-million-dollar construction projects on the Las Vegas Strip, and thus was required to use union workers. (Robert Dep. 28:16–17, Ex. EE to Defs.' MSJ); (Tracey Dep. 107:13–108:21, Ex. FF. to Defs.' MSJ, ECF No. 46).

On November 9, 2005, SS1 signed a collective bargaining agreement (the "CBA") with the International Union of Painters and Allied Trades, District Council 15, Painters Local 159 (the "Union") and the Painting and Decorating Contractors of America, Southern Nevada Chapter ("PDCA"). (CBA Signatures, Ex. 21 to Pls.' MSJ, ECF No. 50-23). Under the terms of the CBA, SS1 was obligated to submit written reports stating the identities and hours worked of employees performing labor covered by the CBA and to pay fringe benefit contributions to Plaintiffs based on those hours. (*See* CBA, Ex. 20 to Pls.' MSJ, ECF No. 50-22).

The CBA states that its provisions remain in effect from July 1, 2004, through June 30, 2007. (*Id.*). However, under the CBA's Duration Clause, the CBA renewed annually "unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other not less than sixty (60) and not more than (90) days prior to June 30, 2007, or June 30 of any subsequent contract year." (*Id.* at 0026). Notably, the CBA requires notice to the Union, not employee benefit funds.[1] The CBA also includes a Preservation of Work Clause, which applies the CBA to other business entities owned, managed, or controlled by those who owned, managed, or controlled SS1.[2] (*Id.* at 0013). In January of 2007, SS1 assigned its bargaining rights to PDCA, authorizing it to represent SS1 in labor negotiations with the Union under the CBA. (Assignment, Ex. 26 to Pls.' MSJ, ECF No. 50-28).

In June of 2009, the Reynolds decided to close their business because, despite their continued bidding, SS1 was not being awarded any projects. (Tracey Dep. 50:14–23, Ex. FF to Defs.' MSJ). Additionally, the Reynolds' son suffered a severe work-place injury on June 26, 2009, further prompting them to end the business. (*Id.* 63:8–16). On August 31, 2009, SS1 laid off its administrative staff. (*Id.* 65:12–18). SS1 did not renew its lease on the Dean Martin property, and cleared out the office and warehouses, either giving away or storing company property, such as vehicles, construction tools, and office supplies. (Robert Dep. 71:25–76:7, Ex. EE to Defs.' MSJ). On June 14, 2010, during a special meeting of stockholders and directors,

---

[1] The CBA is an agreement between the Union and the PDCA, on behalf of SS1. (*See* CBA at 0001, Ex. 20 to Pls.' MSJ, ECF No. 50-22). The Duration Clause requires notice of intent to terminate by one party upon the other. (*Id.* at 0026). Therefore, in order for SS1 to terminate the CBA, they must serve notice to the Union, the other party to the contract.

[2] The Preservation of Work clause states: "To protect and preserve, for the employees covered by this Agreement, all work they have performed and all work covered by this Agreement, and to prevent any devise or subterfuge to avoid the protection and preservation of such work, it is agreed as follows: If the Employer performs on site construction work of the type covered by this agreement, under its own name, the name of another, as a corporation, company, or partnership, or other business entities including a joint venture, wherein the Employer, through its officers, directors, partners, owners, or stockholders, exercises directly or indirectly (through family members or otherwise), management, control, or majority ownership, the terms and conditions of this agreement shall be applicable to all such work." (CBA at 0013, Ex. 20 to Pl.'s MSJ, ECF No. 50-22).

SS1 formally decided to close its business and distribute its remaining assets to Tracey. (June 2010 Minutes, Ex. 49 to Pls.' MSJ, ECF No. 51). SS1 filed its Certificate of Dissolution on October 31, 2011. (Cert. Dissolution, Ex. 58 to Pls.' MSJ).

On October 14, 2009, Tracey sent a letter to Martha Moore, the Administrative Manager for the Painters and Decorators Joint Committee (the "Joint Committee),[3] as notice that they were going out of business. (October Letter, Ex. 34 to Pls.' MSJ, ECF No. 50-36). While "Local No. 159" was included in the address, Martha Moore worked for the Joint Committee, and was not employed by the Union. (*Id.*). (*See also* Pfundstein Dep. 25:15–20, 39:23–40:9, Ex. 24 to Pls.' MSJ, ECF No. 26). The Union has no record of receiving the letter dated October 14, 2009. (Lamberth Decl. ¶ 8, ECF No. 50-2). On March 30, 2012, Tracey sent a letter to Michelle Erdahl at the Employee Painter's Trust,[4] care of Zenith Administrators, stating that SS1 is "OUT OF BUSINESS." (March Letter, Ex. 37 to Pls.' MSJ, ECF No. 50-39). This letter was also sent to Martha Moore, as well as Tom Pfundstein at the PDCA.[5] (*Id.*). The Union has no record of receiving the letter dated March 30, 2012. (Lamberth Decl. ¶ 8, ECF No. 50-2).

On May 27, 2013, Tracey Reynolds, along with non-party Carol Downing, filed Articles of Incorporation with the Nevada Secretary of State to establish an entity called Super Structures Inc. ("SS2"), identifying Tracey as President and Director and Downing as

---

[3] The Painters and Decorators Joint Committee is the predecessor in interest to Plaintiff Painters and Floorcoverers Joint Committee. (Pl.'s MSJ 8:21–25). The Joint Committees is an employee benefit trust fund entitled to contributions from SS1 pursuant to the CBA, but it is a separate entity from the Union. (Pfundstein Dep. 39:23–40:9, Ex. 24 to Pl.'s MSJ, ECF No. 26).

[4] The Employer Painter's Trust is another Plaintiff trust fund to this action, but is also a separate entity from the Union. (Konys Dep. 42:10–25, Ex. 36 to Pl.'s MSJ, ECF No. 50-38).

[5] The PDCA is also a separate entity from the Union. (Pfundstein Dep. 40:5–9, Ex. 24 to Pl.'s MSJ).

Secretary.[6] (Art. Inc., Ex. 59 To Pls.' MSJ, ECF No. 50-61). In October of 2015, Downing resigned and sold her shares back to SS2, making Tracey the sole shareholder; Robert became Secretary. (Oct. 2015 Minutes, Ex. 63 to Pls.' MSJ, ECF No. 50-65); (Nov. 2015 Minutes, Ex. 64 to Pls.' MSJ, ECF No. 50-66). SS2's office is located at 2600 South Rainbow, Unit 204, but uses the same mailing address as SS1. (Art. Inc., Ex. 59 To Pls.' MSJ); (Robert Dep. 80, Ex. EE to Defs.' MSJ). SS2's work primarily consists of small, off-Strip, non-union jobs. (Robert Dep. 102:15, Ex. EE to Defs.' MSJ). While Tracey contacted the Union about a CBA, SS2 ultimately decided not to be a signatory in order to compete with the other off-Strip, non-union contractors. (Tracey Dep. 103:1–112:15, Ex. 5 to Pls.' MSJ).

The parties filed competing motions for summary judgment to decide the issue of whether SS2 owed fringe benefits to Plaintiffs under SS1's CBA. (*See generally* Pls.' MSJ, ECF No. 50); (Defs.' MSJ, ECF No.44). On November 30, 2020, the Court ruled in favor of Plaintiffs, finding that the CBA was not properly terminated and bound SS2 through the Preservation of Work Clause, awarding $188,448.47 in damages. (Order, 15:4–7, ECF No. 62). Defendants now move the Court to reconsider its grant of summary judgment in favor of Plaintiffs. (*See generally* Mot. Reconsideration, ECF No.).

## II. LEGAL STANDARD

### A. Reconsideration[7]

"[A] motion for reconsideration should not be granted, absent highly unusual circumstances." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted). Reconsideration is appropriate where: (1) the court is presented with newly discovered

---

[6] The only difference in the entities' names is the removal of the comma between "Super Structures" and "Inc.," which was accidental. (Tracey Dep. 87:3–5, Ex. FF to Defs.' MSJ, ECF No. 46).

[7] Defendants bring their Motion for Reconsideration under Local Rule 59-1, which permits parties to petition the Court for reconsideration of a case-dispositive order under Federal Rules of Civil Procedure 59(e) or 60(b). The Court construes Defendants' Motion as a Rule 60(b) motion.

evidence; (2) the court committed clear error or the initial decision was manifestly unjust; or (3) there is an intervening change in controlling law. *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A motion for reconsideration is not a mechanism for rearguing issues presented in the original filings, *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985), or "advancing theories of the case that could have been presented earlier," *Resolution Trust Corp. v. Holmes*, 846 F. Supp. 1310, 1316 (S.D. Tex. 1994) (footnotes omitted). Thus, Rule 60(b) is not "intended to give an unhappy litigant one additional chance to sway the judge." *Durkin v. Taylor*, 444 F. Supp. 879, 889 (E.D. Va. 1977). Rule 60(b) relief should only be granted under "extraordinary circumstances." *Buck v. Davis*, 137 S. Ct. 759, 777, 197 L. Ed. 2d 1 (2017).

**B. Attorney's Fees**

Federal Rule of Civil Procedure 54(d)(2) allows a party to file a motion for attorney's fees if it: (1) is filed within 14 days after judgment is entered; (2) identifies the legal basis for the award; and (3) indicates the amount requested or an estimate thereof. In determining whether a fee is reasonable, the Court "multiplies the number of hours reasonably expended by a reasonable hourly rate." *Tallman v. CPS Sec. (USA), Inc.*, 23 F.Supp.3d 1249, 1256 (D. Nev. 2014) (citing *Mendez v. Cnty of San Bernardino*, 540 F.3d 1109, 1129 (9th Cir. 2008)). The resulting figure is referred to as the "lodestar figure," and this amount is a presumptively reasonable fee. *Id.*

**III. DISCUSSION**

**A. Motion for Reconsideration**

Defendants ask the Court to reconsider its Order granting summary judgment in favor of Plaintiffs for three reasons: (1) the Court lacks subject matter jurisdiction over this case because the CBA requires Plaintiffs to exhaust a mandatory grievance procedure before bringing claims in federal court; (2) the Court's grant of summary judgment in favor of Plaintiffs was

inappropriate because: (a) there is a disputed issue of material fact as to whether the union timely received SS1's notice of termination; and (b) the Preservation of Work Clause cannot bind SS2; and (3) the Court incorrectly calculated the damages award in favor of Plaintiffs because Plaintiffs are trust funds with no standing to pursue damages. (Mot. Reconsideration 1:2–18). The Court will discuss each argument in turn.

### i. Subject Matter Jurisdiction

While Defendants have not previously challenged the Court's subject matter jurisdiction in this case, an argument for lack of subject matter jurisdiction "may be raised at any stage in the litigation, even after trial and the entry of judgment." Fed. R. Civ. P. 12(b)(1); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 500 (2006). Nonetheless, Defendants' subject matter jurisdiction argument is without merit.

Defendants argue that the Union was required by the CBA to arbitrate its claim that SS2 owed contributions to Plaintiff employee-benefit trusts prior to bringing an action in federal court. (Mot. Reconsideration 6:7–10). The CBA's Preservation of Work Clause provides: "[a]ll charges of violation of Section I of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this agreement on the handling of grievances and the final binding resolution of disputes." (CBA at 26, Ex. 20 to Pls.' MSJ, ECF No. 50-22). Defendants contend that neither Plaintiffs, nor the Union acting on behalf of Plaintiffs, proceeded through the CBA's grievance process, and thus, the case should be dismissed for lack of subject matter jurisdiction. (Mot. Reconsideration 7:24–8:2).

However, Plaintiffs correctly point out that *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364 (1984), is instructive in this case. (Resp. 12:23–25, ECF No. 12). In *Schneider*, the Supreme Court found that when a collective bargaining agreement does not evidence an intent on the part of the parties to require arbitration of disputes between ERISA benefit plans and employers, the benefit plans could bring an independent action for judicial enforcement of

an employer's trust obligations without depending on the union's use of a grievance or arbitration process. *Schneider*, 466 U.S. at 373–75.  Similarly, here, the CBA demonstrates no intention that Plaintiff employee-benefit trusts should be required to first arbitrate any contributions disputes.  Further, the language cited by Defendants in the CBA's Preservation of Work Clause requires the Union, not employee-benefit trusts, to arbitrate disputes with employers. (*See* CBA at 26, Ex. 20 to Pls.' MSJ).  Accordingly, Plaintiffs were not required by the CBA to arbitrate their claims prior to bringing the case in federal court, and the Court has subject matter jurisdiction over this action. *See e.g.*, *Carpenters Health & Welfare Tr. Fund for Cal. V. Bla-Delco Constr., Inc.*, 8 F.3d 1365, 1368 (9th Cir. 1993) ("the collective bargaining agreement did not require trustees of employee-benefit trust funds to arbitrate their claims against the employers before bringing collection suits in federal court").[8]

## ii. Reconsideration of the Court's Order on Summary Judgment

Defendants argue that reconsideration is warranted for this Court's Order on summary judgement for two reasons: (1) a genuine issue of material fact exists as to whether SS1 properly notified the Union of the CBA's termination; and (2) the Preservation of Work Clause does not apply to SS2.  However, as discussed below, the Court finds that reconsideration is inappropriate in this case because Plaintiff has not demonstrated newly discovered evidence, manifest injustice, or an intervening change in the law. *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

### 1. SS1's Insufficient Notice to the Union

In its Order on summary judgment, the majority of the Court's analysis focused on whether SS1 properly notified the Union of the CBA's termination. (Order 10:1–15:7, ECF No. 62).  Based on the evidence argued by the parties, the Court concluded that the Union was not

---

[8] Defendants' Reply also did not contest Plaintiffs' argument that they were not required to arbitrate their claims prior to bringing this action in federal court based on the Supreme Court's reasoning in *Schneider*. (*See generally* Reply, ECF No. 81).

properly notified because SS1 erroneously sent its letter of termination to Martha Moore of the Joint Committee. (*Id.* 11:10–12:5). Further, the Court concluded that there was no evidence the Union received SS1's termination letter within the appropriate time frame. (*Id.* 12:25). Defendants' Motion for Reconsideration continues to argue these points.

First, Defendants assert once again that sending notice to Martha Moore and the Joint Committee essentially put the Union on notice of the CBA's termination. (Mot. Reconsideration 8:16–9:23). Second, Defendants argue that because "another [non-union] recipient of [the] letter" received it in April 2010, the Union must also have received it. (*Id.* 9:24–10:2). However, as the Court already reasoned in its Order, the terms of a collective bargaining agreement must be strictly construed. *Irwin v. Carpenters Health and Welfare Trust Funds for California*, 745 F.2d 553, 557 (9th Cir. 1984). The CBA requires that the *Union* receive notice of the CBA's termination, not Martha Moore, or the Joint Committee, or "another person," as Defendants argue. As such, Defendants are merely rearguing issues presented in the original filings, which does not provide a justification for reconsideration. *See Backlund*, 778 F.2d at 1388 (9th Cir. 1985).

*2. Preservation of Work Clause's application to SS2*

Defendants argue that prior to applying the CBA's Preservation of Work Clause to SS2, the Court needed to make a preliminary determination that SS2 is the alter ego of SS1. (Mot. Reconsideration 11:8–12). However, this is the first time Defendants have raised any challenge to Plaintiffs' contention that the Preservation of Work Clause specifically applied to SS2. In prior pleadings, Defendants merely argued that the CBA as a whole was inapplicable, but did not make alternative arguments concerning the applicability of the CBA's individual clauses, in case the Court found that the CBA was not terminated. (*See* Order 14:1–2, ECF No. 62). A Motion for Reconsideration does not provide Defendants with the opportunity to "advance

theories of the case that could have been presented earlier." *Resolution Trust Corp.*, 846 F. Supp. at 1316. Accordingly, reconsideration of this matter is inappropriate.

### iii. Standing

In their original Motion for Summary Judgment, Plaintiffs provided an audit schedule calculating a damage award totaling $188,448.47, which included a $7,682.94 charge for union dues. (*See* Audit Schedule, Ex. 70 to Pls.' MSJ, ECF No. 50-72). The Court awarded the total amount of damages because Defendants failed to contest the audit schedule. (Order, 15:3–7). Defendants now argue that Plaintiffs have no standing to collect the $7,682.94 in union dues because under the CBA, this money should be withheld from an employees' paycheck and paid directly to the Union. (Mot. Reconsideration 12:4–13:3). Defendants appear to raise this late standing challenge because they failed to contest the audit schedules at the summary judgment stage and are otherwise without a mechanism to dispute the damages award. However, as referenced above, the Supreme Court already determined that a benefit trust fund may bring ERISA cases on behalf of union pension plans. *Cf. Northwest Sheet Metal Workers Welfare Fund v. Morrison Constr. Servs.*, 393 F. Supp. 2d. 1053, 1055 (E.D. Wash. 2005) (citing *Schneider*, 466 U.S. at 373–75) ("The plaintiff trustees brough the action under ERISA . . . which the Supreme Court has deemed appropriate."). Further, the CBA requires employers to remit all contributions, including union dues, to the Joint Committee, meaning that the union dues are part of the delinquent fringe benefit contributions accounted for in the audit schedule. (*See* CBA at 23–24, Ex. 20 to Pls.' MSJ). Therefore, the Court is satisfied that Plaintiffs have standing to recover the $7,682.94 in union dues as part of its damages award.

//
//
//
//

**B. Motion for Attorney Fees**

   *i. Entitlement to Attorney's Fees and Costs*

Plaintiffs' Motion for Attorney Fees seeks $122,762.00 in attorney's fees, $3,055.00 in audit fees, [9] and $7,905.87 in costs associated with litigating this action. (Mot. Atty. Fees 11:1–3, ECF No. 63). Plaintiffs assert that they are contractually entitled to such fees and costs pursuant to the collective bargaining and trust agreements between the parties. (*Id.* 8:1–20). Additionally, Plaintiffs argue that an award of these fees and costs is mandatory pursuant to 29 U.S.C. § 1132(g)(2). (*Id.* 6:6–7:25).

Under 29 U.S.C. § 1132(g)(2)(D), trustees are entitled to an award of attorney's fees in successful actions to collect any unpaid fringe benefit contributions. *See Kemmis v. McGoldrick*, 706 F.2d 993, 997 (9th Cir. 1983); *San Pedro Fishermen's Welfare Trust Fund Local 33 v. Di Bernardo*, 664 F.2d 1344 (9th Cir.1982) (holding the damages specified in 29 U.S.C. § 1132(g)(2), including attorneys' fees, must be awarded whenever an ERISA trust fund obtains a judgment for unpaid contributions against an employer). Defendants do not oppose Plaintiffs' claim that they are entitled to attorney's fees and costs pursuant to the collective bargaining and trust agreements, but argue that an award of fees and costs is only discretionary pursuant 29 U.S.C. § 1132(g)(1) ("In any action under this title (other than an action described in paragraph 2) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."). However, 29 U.S.C. § 1132(g)(2) states that in an action brought by a fiduciary for or on behalf of a plan to enforce 29 U.S.C. §1145, the court "shall" award reasonable attorney's fees and costs. Here, Plaintiff employee-benefit trusts brought a claim under 29 U.S.C. § 1145 to recover delinquent plan

---

[9] Plaintiffs' request for fees and costs includes a request for $3,055.00 in audit fees that Plaintiffs incurred by hiring Berry & Co. to calculate Defendants' unpaid contributions, interest, and liquidated damages. (Mot. Atty. Fees 4:6–10). Defendants do not contest the inclusion of the audit fees in Plaintiffs' fees and costs request, and the Court may award audit fees under 29 U.S.C. § 1132(g)(2)(E). *See, e.g.*, *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1343 (9th Cir. 1988).

contributions, interest, and damages, and the Court awarded them $188.448.47. (Order, 10:2–5, 15:4–7). As such, 29 U.S.C. § 1132(g)(2), and not § 1132(g)(1), applies to this action, and thus, the award of fees and costs is mandatory under the statute. The Court therefore finds that under the terms of the collective bargaining agreement, and pursuant to 29 U.S.C. § 1132(g)(2), Plaintiffs are entitled to their attorney's fees and costs.

### ii. Reasonableness

Once a party has established its entitlement to an award of attorney's fees, the Court must determine the reasonableness of the requested amount. *In re USA Commercial Mortg. Co.*, 802 F. Supp. 2d 1147, 1178 (D. Nev. 2011). In assessing the reasonableness of an hourly rate, the Court considers the experience, skill, and reputation of the attorney requesting fees. *Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). This rate is calculated at the "prevailing market rate in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). Here, Plaintiffs' counsel requests fees at a rate up to $180/hr. for attorneys' work and $110/hr. for law clerks' work. (Mot. Atty. Fees 10:21); (Smith Decl. ¶ 6, Ex. 3 to Mot. Atty. Fees, ECF No. 63-3); (Invoice, Ex. 3 to Mot. Atty. Fees, ECF No. 63-3).

Upon review, the Court finds that Plaintiffs' requested fees and costs are reasonable. The Court bases this finding on the length and quantity of discovery, motions filed, number of hours worked, and the complexity of the issues presented. In particular, the Court recognizes the experience of Plaintiffs' counsel in handling employee benefit trust fund collection matters. (*See* Smith Decl. ¶ 17, Ex. 3 to Mot. Atty. Fees). While many of the issues presented in this case were not novel, ERISA trust fund legal work requires an in-depth understanding of complex federal statutes, collective bargaining agreements, and trust agreements, as well as the nuanced issues arising out of the intersection of these understandings. Further, ERISA litigation is a fact intensive and detail-oriented inquiry, and thus, is time consuming. The Court

also notes that Plaintiffs complied with the applicable provisions of Local Rule 54-14 by providing a detailed itemization and description of the work performed, as well as a summary of the fees charged and the time and labor required. Finally, Plaintiffs' requested hourly rates are consistent with, and even on the low end of, comparable rates for ERISA actions in this district. *See, e.g.*, *Tollen v. Clark Cty. Ass'n of Sch. Admin. & Prof'l Employees*, No. 2:15-CV-01096-JAD-NJK, 2016 U.S. Dist. LEXIS 167444, 2016 WL 7451623, at *2 (D. Nev. Dec. 2, 2016) (finding hourly rates of $275-290 for associates and $350-360 for partners to be reasonable); *Trustees of Teamsters Local 631 Sec. Fund for S. Nevada v. Knox Installation - Dismantling & Servs., Inc.*, No. 2:12-CV-1689-JAD-GWF, 2013 U.S. Dist. LEXIS 128940, 2013 WL 4857897, at *6 (D. Nev. Sept. 9, 2013) (finding hourly rates of $300 for partner work, $270-280 for associate work, and $160-165 for paralegal work to be reasonable); *Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. B. Witt Concrete Cutting, Inc.*, 685 F. Supp. 2d 1158, 1165 (D. Nev. 2010) (finding hourly rates of $285-310 for an attorney and $160-175 for a paralegal to be reasonable).

To contest the reasonableness of Plaintiffs' fees and costs, Defendants' assert that "Plaintiffs have failed to provide the billing statements or any details to provide any analysis of the same." (Resp. to Mot. Atty. Fees 2:21–22, ECF No. 71). However, this statement is patently incorrect; Plaintiffs provided a detailed declaration from attorney Wesley J. Smith of Christensen James & Martin, Chtd., the firm retained to represent Plaintiffs, as well as over sixty pages of invoices and accounts attached therein. (*See* Smith Decl., Ex. 3 to Mot. Atty. Fees). Otherwise, Defendants raise no particularized objections to Plaintiffs' specified charges, as required by this District's Local Rules. *See* LR 54-14(d) ("If an opposition is filed, it must set forth the specific charges that are disputed and state with reasonable particularly the basis

for the opposition."). Accordingly, the Court finds Plaintiffs' attorney's fees and costs to be reasonable.[10]

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Reconsideration, (ECF No. 72), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Attorney Fees, (ECF No. 63), is **GRANTED**. The Court awards attorney's fees in the amount of $122,762.00, audit fees in the amount of $3,055.00, and costs in the amount of $7,905.87 against Defendants.

**DATED** this __27__ day of September, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT

---

[10] Defendants also claim that Plaintiffs' Motion for Attorney Fees is not yet ripe and asks the Court to refrain from considering the Motion "unless and until the Motion for Reconsideration is denied." (Resp. to Mot. Atty. Fees 4:20–24, ECF No. 71). However, as this Order also denies the Motion for Reconsideration, it is appropriate to consider Plaintiffs' Motion for Attorney Fees as well.